**At a Part DD of the Supreme Court of the State of New York, County of Rockland, held at the Courthouse located at One S. Main St., New City, New York on May 28, 2026**

**PRESENT: HON. DJINSAD DESIR, AJSC**

-----------------------------------------------------------------X

ABRAHAM KLEINMAN,

Plaintiff

v.

JACOB FRANKEL A/K/A JACOB FRANKL et al.

Defendants.

-----------------------------------------------------------------X

Index No. 030127/2026

ORDER TO SHOW CAUSE

Motion Seq. No. 003

Upon the reading and filing of the annexed affirmations of PETER A. HURWITZ, ESQ., Defendant JACOB FRANKL and CHAIM SILBER, all dated May 25, 2026, and all exhibits annexed thereto, the Memorandum of Law in Support dated May 26, 2026, and all pleadings and proceedings had previously herein,

LET Plaintiff ABRAHAM KLEINMAN show cause at a term of this Court to be held in and for the County of Rockland, at the Courthouse thereof, located One South Main Street, New City, County of Rockland, State of New York, on the 26th day of June, 2026, at 9:30 o'clock in the forenoon of that day, in-person appearance or as soon thereafter as counsel can be heard,

WHY an order should not be made for (a) dismissal of Plaintiff's complaint based on Plaintiff's spoliation of evidence, and that a stay of discovery be issued pending determination of Defendants' motion to dismiss based on spoliation; (b) in the alternative, Defendants respectfully request a protective order pursuant to CPLR § 3103(a) denying Plaintiff's second set of discovery demands; and (c) sanctions against Plaintiff pursuant to 22 NYCRR Part 130-1.1, for

Plaintiff's frivolous conduct, and for such other and further relief as this Court deems just and proper.

~~ORDERED that pending the hearing and determination of this application, all discovery deadlines are stayed.~~

ORDERED that service of a copy of this Order, together with the papers upon which it was granted, be served upon Defendant by NYSCEF and email on or before May 29, 2026 , 2026, shall be deemed sufficient service.

ORDERED that any opposition to this motion shall be submitted by June 18, 2026.

Dated: May 28 , 2026
New City, New York

ENTER:

**HON. DJINSAD DESIR, AJSC**

# EXHIBIT G

Verified Complaint and Summons
Kleinman v. Frankel, et al., No. 1:26-cv-04899 (S.D.N.Y.)
(filed June 8, 2026; Plaintiff's sworn Florida citizenship
and Miami Beach, Florida address)

26CV1237



AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

RECEIVED
2026 JUN 15 A 9:43
ROCKLAND COUNTY SHERIFF
NEW CITY, NEW YORK

ABRAHAM KLEINMAN,

*Plaintiff(s)*

v.

JACOB FRANKEL a/k/a JACOB FRANKL a/k/a YACOV FRANKEL a/k/a YACOV YISROEL FRANKEL a/k/a YISROEL FRANKL, SHEINDL KLEIN a/k/a SHEINDL FRANKL AND PETER A. HUROWITZ

*Defendant(s)*

Civil Action No. 26-CV-4899

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Peter A. Hurowitz
20 North Main Street,Apt 203,
New City, New York 10956.

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Abraham KleinmanPlaintiff, Pro Se
3901 Indian Creek
Miami Beach, FL 33140

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: 6/11/2026

Tammi M. Hellwig

S. Coretto
*Signature of Clerk or Deputy Clerk*

Civil Action No. 26-CV-4899

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for *(name of individual and title, if any)* ______________________
was received by me on *(date)* ______________ .

☐ I personally served the summons on the individual at *(place)* ______________________
______________________ on *(date)* ______________ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* ______________
______________________ , a person of suitable age and discretion who resides there,
on *(date)* ______________ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* ______________________ , who is
designated by law to accept service of process on behalf of *(name of organization)* ______________
______________________ on *(date)* ______________ ; or

☐ I returned the summons unexecuted because ______________________ ; or

☐ Other *(specify)*:

My fees are $ ________ for travel and $ ________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ______________

______________________
*Server's signature*

______________________
*Printed name and title*

______________________
*Server's address*

Additional information regarding attempted service, etc:

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------

ABRAHAM KLEINMAN,

Plaintiff,

-against-

JACOB FRANKEL a/k/a JACOB FRANKL, a/k/a YACOV FRANKEL a/k/a YACOV YISROEL FRANKEL, a/k/a YISROEL FRANKL, and SHEINDL KLEIN a/k/a SHEINDL FRANKL, PETER A. HURWITZ, "JOHN DOE," and "JANE DOE,"

Defendants.

-----------------------------------------------------------------

Case No. 26 Civ. _____

**VERIFIED COMPLAINT**

(CIVIL RICO AND STATE LAW CLAIMS)

**JURY TRIAL DEMANDED**

Plaintiff Abraham Kleinman ("Plaintiff"), as and for his Verified Complaint against Defendants Jacob Frankl a/k/a Yisroel Frankl ("Frankl") and Sheindl Klein a/k/a Sheindl Frankl ("Klein," and together with Frankl, "Defendants"), alleges as follows, upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters: Defendant Peter A. Hurwitz ("Hurwitz"), and Defendants "John Doe" and "Jane Doe," are additionally named for the conduct described below.

## NATURE OF THE ACTION

1. This action arises out of a sustained, ongoing, felony-grade scheme by Defendant Frankl, in concert with Defendant Klein, to deprive Plaintiff of his property, both money and a chose in action, through repeated extortionate threats of false criminal accusations against Plaintiff and against witnesses essential to Plaintiff's case. Each act in the scheme is independently documented in the official records of the Ramapo Police Department, the New

York State Courts Electronic Filing System, and Defendants' own sworn submissions in the related state court action.

2. The underlying property at stake is the $11,500.00 balance of an oral sublease for the basement of 5 Bartlett Road, Monsey, New York 10952, for the months of July and August 2025. Defendants made partial payment of $6,500.00 by check no. 1008 drawn on Congregation Oseh Choyil Inc., and failed and refused to pay the balance. Defendants vacated the premises on August 21, 2025, by their own sworn admission in their response to Interrogatory No. 3 in the state action Kleinman v. Frankl, Index No. 030127/2026 (Supreme Court, Rockland County) (the "State Action").

3. Beginning on November 18, 2025, and continuing through at least April 23, 2026, Defendant Frankl undertook a sustained scheme to compel Plaintiff to abandon his lawful claim for the unpaid $11,500.00 by means of repeated false police reports falsely accusing Plaintiff and witnesses essential to Plaintiff's case of crimes that never occurred. Each false report had as its purpose to instill in Plaintiff a fear that, unless he abandoned the prosecution of the State Action, Defendant Frankl would continue to accuse him and his witnesses of crimes and would cause additional criminal investigations to be instituted against them.

4. On November 18, 2025, Defendant Frankl contacted the Ramapo Police Department and falsely reported that Plaintiff had broken into his residence, thereby falsely accusing Plaintiff of the crime of burglary. The Ramapo Police Department opened Case No. RPD25-020297 on November 18, 2025 based on Defendant Frankl's false burglary complaint against Plaintiff. The responding officer documented that there were "no signs of forced entry," that Frankl had "no cameras at his residence," that "nothing was reported missing," and closed

the incident as "NON-Offense." Frankl refused to sign a written statement attesting to his accusation against Plaintiff.

5. Two days later, on November 20, 2025, Defendant Frankl returned to the Ramapo Police Department and formally memorialized his earlier accusation by identifying Plaintiff by name as the alleged intruder. For the first time, he claimed two cameras worth "approximately $1,000 each" had been stolen, directly contradicting his November 18 statement that he had no cameras and that nothing was missing. The investigating officer documented Plaintiff's contemporaneous statement that Frankl was "using the Police to try to 'intimidate' him due to Jacob owing him money."

6. On April 5, 2026, Defendants' counsel filed in the State Action a letter (NYSCEF Doc. No. 34) attaching as Exhibit A a deed dated May 7, 2025 (NYSCEF Doc. No. 35) that, on its face, identified non-party witness Yonatan Yosef as the contact for the buyer Bartlett Tower LLC and identified CIG Bartlett LLC (of which Mr. Yosef is, on information and belief, the Sole Member) as the seller. From and after April 5, 2026, Defendants and their counsel had actual knowledge of Mr. Yosef's documentary connection to the Premises.

7. On April 13, 2026, at a compliance conference before the State Court, Plaintiff disclosed on the record, in the presence of Defendants' counsel, that he held a master lease on the Premises with broad subletting authority. The State Court directed that paper discovery, including production of the master lease, be completed by April 27, 2026.

8. On April 21, 2026, at 2:55:32 p.m., Defendant Frankl, transmitting from his personal electronic-mail account yyf9225@gmail.com under the signature "Yisroel Frankl," transmitted to the Ramapo Police Department a false electronic-mail complaint requesting investigation of Mr. Yosef.

9. Unbeknownst to Plaintiff that a false police report against Mr. Yosef was in the works, Plaintiff thereafter, on April 23, 2026 at approximately 10:50 a.m., in good-faith compliance with the State Court's discovery directive, transmitted by electronic mail to Defendants' counsel Peter A. Hurwitz, Esq., a copy of the master lease for the Premises.

10. The Ramapo Police Department thereafter, on April 23, 2026 at 12:51 p.m., placed a responsive telephone call to Mr. Yosef. Defendant Frankl's purpose was to drive Mr. Yosef into uncooperation, thereby depriving Plaintiff of essential testimony and increasing the likelihood that Plaintiff would be unable to recover the unpaid sublease balance. Mr. Yosef is a critical non-party witness whose testimony would defeat Defendants' principal standing defense in the State Action.

11. Defendant Frankl's conduct constitutes, at a minimum, the following crimes under New York law: Grand Larceny in the Third Degree under Penal Law Sections 155.35 and 155.05(2)(e)(iv), a Class D felony punishable by up to seven years' imprisonment (larceny by extortion through threat to accuse of a crime, the property exceeding the $3,000.00 felony threshold); Grand Larceny in the Fourth Degree under Penal Law Section 155.30(6), a Class E felony (larceny by extortion regardless of value); Coercion in the Third Degree under Penal Law Section 135.60(4); Tampering with a Witness in the Fourth Degree under Penal Law Section 215.10, as to non-party witness Yosef; Offering a False Instrument for Filing in the Second Degree under Penal Law Section 175.30, as to the April 21, 2026 electronic-mail transmission; and Falsely Reporting an Incident in the Third Degree under Penal Law Section 240.50.

12. Each of the foregoing offenses under New York law that is punishable by imprisonment for more than one year constitutes a predicate "act or threat involving... extortion... which is chargeable under State law and punishable by imprisonment for more than one year"

within the meaning of 18 U.S.C. Section 1961(1)(A), and is therefore a predicate act of racketeering activity for purposes of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Sections 1961-1968 ("RICO").

13. Defendants conducted, and continue to conduct, the affairs of an association-in-fact enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. Section 1962(c). Defendants further conspired to violate 18 U.S.C. Section 1962(c), in violation of 18 U.S.C. Section 1962(d).

14. Plaintiff has been injured in his business and property by reason of Defendants' RICO violations, including but not limited to (i) the continuing wrongful withholding of the $11,500.00 sublease balance; (ii) consequential litigation-support, investigation, and out-of-pocket expenses incurred in responding to and defending against the false police reports: (iii) reputational injury in the Monsey, New York community and the Old Nyack Trnpk shul community where Frankl admitted to police that he photographed and recorded Plaintiff: (iv) severe emotional distress; and (v) the loss of testimonial cooperation by witnesses chilled by Defendants' extortionate scheme. Plaintiff seeks compensatory damages, treble damages under 18 U.S.C. Section 1964(c), punitive damages on each common-law tort count, attorneys' and litigation-support fees, costs and disbursements, and equitable and injunctive relief, in an aggregate amount in excess of $30,000,000.00, the precise amount to be determined at trial.

**JURISDICTION AND VENUE**

15. This Court has original subject-matter jurisdiction pursuant to 28 U.S.C. Section 1331, in that this action arises in part under the laws of the United States, specifically the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Sections 1961-1968, as set forth in Counts I and II below.

16. This Court has supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. Section 1367(a), in that all such claims are so related to the federal RICO claims that they form part of the same case or controversy under Article III of the United States Constitution.

17. This Court has independent original subject-matter jurisdiction pursuant to 28 U.S.C. Section 1332(a)(1), in that: (a) Plaintiff is a citizen of the State of Florida, domiciled in Florida with the intention to remain there indefinitely; (b) Defendants Frankl and Klein are each citizens of the State of New York, domiciled in Rockland County, New York; (c) complete diversity of citizenship exists between Plaintiff and all Defendants; and (d) the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.00 by more than four hundred fold.

18. Federal-question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367(a)—including supplemental jurisdiction over Plaintiff's claim under New York Judiciary Law § 487—furnish the primary basis of this Court's subject-matter jurisdiction and do not depend upon the citizenship of any party. To the extent the citizenship of Defendants "John Doe" and "Jane Doe" is presently unknown, their joinder does not defeat or impair the Court's jurisdiction, which rests upon the federal RICO claims; the diversity allegations set forth above are pleaded in the alternative. Defendant Hurwitz is a citizen of New York and is subject to the personal jurisdiction of this Court.

19. Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b)(2), in that a substantial part of the events giving rise to Plaintiff's claims occurred in this District. The premises at 5 Bartlett Road, Monsey, New York 10952, which is the subject of the underlying sublease, is located in Rockland County, which is within the Southern District of New York. The

false police reports were transmitted to the Ramapo Police Department, located in Rockland County. Defendants reside in Rockland County. The State Action is pending in Rockland County Supreme Court.

20. Venue for the RICO claims is independently proper pursuant to 18 U.S.C. Section 1965(a), in that Defendants reside in, are found in, have agents in, and transact their affairs in this District.

21. This Court has personal jurisdiction over each Defendant pursuant to Fed. R. Civ. P. 4(k)(1)(A) and CPLR Sections 301 and 302(a)(1) and (2), in that each Defendant is domiciled in New York, transacts business in New York, and has committed tortious acts within New York giving rise to the claims herein.

**THE PARTIES**

22. Plaintiff Abraham Kleinman is a natural person and a citizen of the State of Florida, domiciled in Miami Beach, Miami-Dade County, Florida, with the intention to remain in Florida indefinitely. Plaintiff is the sublessor under the oral sublease at the center of this dispute and the holder of the chose in action for the $11,500.00 unpaid balance.

23. Defendant Jacob Frankl a/k/a Jacob Frankl a/k/a Yacov Frankl a/k/a Yacov Yisroel Frankl a/k/a Yisroel Frankl is, upon information and belief, a natural person and a citizen of the State of New York, residing at 4 Horizon Court, Apartment 304, Monsey, Rockland County, New York 10952. Defendant Frankl uses multiple legal and Hebrew/Yiddish names: "Jacob" and "Yacov" are the English and Hebrew equivalents of the same given name, with "Yisroel" being the religious/family name commonly paired with "Yacov" in Orthodox Jewish nomenclature. At all relevant times, Defendant Frankl has used and continues to use, on information and belief, the personal electronic-mail address yyf9225@gmail.com, in which

"yyf" corresponds to his initials ("Yacov Yisroel Frankl") and "9225" corresponds to the last four digits of his personal telephone number, 347-930-9225. Defendant Frankl is the principal architect and operator of the extortionate scheme alleged herein.

24. Defendant Sheindl Klein a/k/a Sheindl Frankl is, upon information and belief, a natural person and a citizen of the State of New York, residing in Rockland County, New York. Defendant Klein is the spouse of Defendant Frankl and is a co-occupant of the sublet premises, a co-counterclaimant in the State Action, and a participant in the racketeering enterprise.

25. Defendant Peter A. Hurwitz ("Hurwitz") is, upon information and belief, a natural person and a citizen of the State of New York, maintaining his law office and principal place of business at the Law Office of Peter A. Hurwitz, PLLC, 120 North Main Street, Suite 203, New City, Rockland County, New York 10956. Hurwitz is the attorney of record for Defendants Frankl and Klein in the State Action. Hurwitz is named in his individual capacity for his own conduct in conceiving, counseling, directing, coordinating, and facilitating the extortionate scheme alleged herein, including the false reports to the Ramapo Police Department, and is not named for any statement made by him to a court or in any court filing, which are expressly disclaimed as a basis for liability. As Frankl himself represented to the Ramapo Police Department, Frankl acted on and in coordination with Hurwitz's "legal advice" in submitting the false police complaint that is among the predicate acts alleged below.

26. Defendant "John Doe" is a fictitious name for a natural person whose true identity is presently unknown to Plaintiff and will be ascertained through discovery. Upon information and belief, "John Doe" knowingly assisted Defendant Frankl in composing, drafting, and transmitting the false electronic-mail complaint of April 21, 2026 to the Ramapo Police

Department, including the knowingly false statements therein directed at non-party witness Yonatan Yosef and at Plaintiff.

27. Defendant "Jane Doe" is a fictitious name for a natural person whose true identity is presently unknown to Plaintiff and will be ascertained through discovery. Upon information and belief, "Jane Doe" is the "neighbor" referenced in the records of the Ramapo Police Department who first reported only that she "believed" she saw an unidentified person and that "the memory was foggy," and who thereafter, in concert with Defendant Frankl, fabricated and escalated that account into a purported identification of a person "looking like Mr. Kleinman," knowing the same to be false, in furtherance of the scheme alleged herein.

28. The true names and capacities of "John Doe" and "Jane Doe" are unknown to Plaintiff, who will seek leave to amend this Complaint to allege their true names and capacities once ascertained. Pursuant to Fed. R. Civ. P. 15(c), any such amendment will relate back to the date of the filing of this Complaint.

## FACTUAL ALLEGATIONS

### *A. The Sublease and Defendants' Initial Theft by Withholding*

29. In or about June 2025, Defendants approached Plaintiff seeking to sublease the basement of 5 Bartlett Road, Monsey, New York 10952 (the "Premises") for the months of July and August 2025. Plaintiff held and continues to hold a master lease on the Premises with broad subletting authority.

30. Plaintiff and Defendants entered into an oral sublease agreement under which Defendants agreed to pay $18,000.00 in rent for July and August 2025 for use of the Premises.

31. Defendants made partial payment in the amount of $6,500.00 by check no. 1008 drawn on the account of Congregation Oseh Choyil Inc. on file with NorthEast Community Bank.

32. Defendants occupied the Premises from July 2025 through August 21, 2025. Defendants admitted, under oath, in their sworn response to Plaintiff's Interrogatory No. 3 in the State Action (NYSCEF Doc. No. 77 in Index No. 030127/2026): "Finally, Defendants vacated the premises on August 21, 2025."

33. Defendant Frankl further admitted, under oath, in his response to Item 5 of Plaintiff's First Notice to Admit in the State Action (NYSCEF Doc. No. 24), that the $6,500.00 paid represented "the full amount of rent due." As one cannot vacate what one has not occupied, and as one cannot owe rent that one is not legally obligated to pay, this admission establishes that the sublease was valid, the Premises were occupied for the contractually agreed period, and the $11,500.00 balance is owed.

34. Defendants failed and refused, and continue to fail and refuse, to pay the $11,500.00 balance. Defendants have withheld the $11,500.00 from Plaintiff continuously since at least August 21, 2025.

35. The $11,500.00 is property of Plaintiff within the meaning of New York Penal Law Section 155.00(1), in that it constitutes (i) money, (ii) compensation for services in the form of the use of the Premises, (iii) a thing in action (a chose in action) to enforce the unpaid contractual debt, and (iv) evidence of debt or contract arising from the sublease.

36. Defendants' withholding of the $11,500.00 has been at all times intentional, knowing, and undertaken with the intent to deprive Plaintiff of the property permanently, within

the meaning of New York Penal Law Section 155.00(3)(a). The intent is established by, among other things, Defendant Frankl's sworn admission that the $6,500.00 represented "the full amount of rent due," coupled with Defendants' subsequent demand for the return of that $6,500.00 in the State Action, demonstrating mutually exclusive sworn positions that can only be reconciled by an intent to retain Plaintiff's property in any way Defendants can manage.

37. Defendants' withholding of the $11,500.00, with intent to deprive, itself constitutes the crime of larceny by withholding under New York Penal Law Section 155.05(1). Because the value of the property exceeds $3,000.00, the offense is Grand Larceny in the Third Degree under New York Penal Law Section 155.35, a Class D felony.

***B. Predicate Act One: November 18, 2025 False Police Report***

38. On November 18, 2025, after Defendants had already been placed on notice of Plaintiff's claim for the unpaid sublease balance, Defendant Frankl contacted the Ramapo Police Department and caused officers to be dispatched to his residence at 4 Horizon Court, Apartment 304, Monsey, New York 10952. Defendant Frankl falsely reported to the Ramapo Police Department that Plaintiff Abraham Kleinman had broken into his residence, thereby falsely accusing Plaintiff of the crime of burglary. The Ramapo Police Department opened Case No. RPD25-020297 on November 18, 2025 based on Defendant Frankl's false burglary complaint against Plaintiff.

39. Defendant Frankl reaffirmed and formally memorialized that accusation against Plaintiff by name in his subsequent statement to PO Krzysztof Zalewski two days later, on November 20, 2025, as set forth below. The November 18 and November 20, 2025 communications together constitute a single, continuous false accusation by Defendant Frankl that Plaintiff committed the crime of burglary against him.

40. The responding officer, PO Charles Schoenleber, documented the investigation in Ramapo Police Department Case No. RPD25-020297. The official police record memorializes the following findings: "No signs of forced entry." Frankl had no cameras at his residence. "Nothing was reported missing." Disposition: "Closed - NON-Offense."

41. Defendant Frankl refused to sign a written statement attesting to his accusation. PO Schoenleber, in a subsequent Supplement Narrative dated November 26, 2025, expressly documented: "I informed Abraham that Jacob never signed a written statement stating he broke into his house."

42. Defendant Frankl's refusal to sign a written statement is direct evidence of his consciousness of the falsity of his accusation. An honest reporter would have no reason to refuse to memorialize his statement under oath. Defendant Frankl refused to do so because to do so would expose him to liability for Falsely Reporting an Incident under New York Penal Law Section 240.50, Offering a False Instrument for Filing under Section 175.30, and Making a Punishable False Written Statement under Section 210.45.

43. The November 18, 2025 false report was made for the purpose of, and with the effect of, instilling in Plaintiff a fear that, if he did not abandon his pursuit of the unpaid sublease balance, Defendant Frankl would continue to accuse him of crimes and cause additional criminal investigations to be instituted against him.

***C. Predicate Act Two: November 20, 2025 Escalated False Police Report***

44. Two days later, on November 20, 2025, Defendant Frankl returned to the Ramapo Police Department and made a second false report, this one materially escalating the prior accusation.

45. In a Supplement Narrative dated November 20, 2025, PO Krzysztof Zalewski documented that Defendant Frankl formally identified Plaintiff Abraham Kleinman by name as the alleged intruder, reaffirming and memorializing the burglary accusation Defendant Frankl had filed against Plaintiff two days earlier. Defendant Frankl asserted that he had seen Plaintiff "at a shul on Old Nyack Trnpk and began recording him and taking photos of him there," and that "the timing of Abraham coming around is suspicious as it lines up with him finding his door open."

46. Also for the first time, on November 20, 2025, Defendant Frankl claimed that two cameras "were missing from the residence," allegedly worth "approximately $1,000 each." This statement is directly contradicted by Frankl's November 18, 2025 statement to PO Schoenleber that he had no cameras at his residence and that nothing was reported missing.

47. When asked to provide identifying information about the alleged stolen cameras, Defendant Frankl admitted to PO Zalewski that he "could not provide any other identifying information on them other than that they were 'expensive.'" No serial numbers, no make, no model, no purchase records, no photographs of the cameras. The cameras are recorded in the Ramapo Police Department's property log as "Article - Camera," status "Missing," never recovered.

48. The Ramapo Police Department's own contemporaneous records conclusively establish that the "stolen camera" that Defendant Frankl later invoked as a pretext for his accusations never existed. In the Primary Narrative of Ramapo Police Department Case No. RPD25-020297, dated November 18, 2025, the responding officer, PO Charles Schoenleber, recorded that Frankl "stated nothing was missing from the home," and, in the very same narrative, that "Jacob has no cameras at his residence."

49. Two days later, on November 20, 2025, Defendant Frankl reversed himself. In the Supplement Narrative of PO Krzysztof Zalewski dated November 20, 2025, Frankl claimed for the first time that "2 cameras were missing from the residence," asserting that the cameras "were worth approximately $1,000 each," while admitting that he "could not provide any other identifying information on them other than that they were 'expensive.'"

50. Frankl's claim was, on its face and by his own prior words, false. A man who told the police on November 18 that he "has no cameras at his residence" and that "nothing was missing" cannot truthfully report two days later that two cameras worth $2,000 had been stolen. The Department's Property/Evidence record (Item No. RPD25-020297-001) lists the purported missing item only as "Camera," quantity 2, value $1,000, with no make, no model, no serial number, no color, and no photograph—the hallmarks of a fabricated loss. Upon information and belief, no camera was stolen and Frankl never owned the cameras he described; the grounds for this belief are the Department's records cited herein and Frankl's own admission that he "could not provide any other identifying information."

51. Plaintiff was interviewed by telephone by PO Zalewski. Plaintiff stated that he had a business deal with Defendant Klein involving the rental of the basement of 5 Bartlett Road, that money was still owed, and that he denied breaking into Defendant Frankl's residence or having any involvement with the door. PO Louis documented Plaintiff's contemporaneous characterization: that "Frankl made complete and fabricated false statements against him."

52. On November 26, 2025, Plaintiff attended at Ramapo Police Department headquarters in person to inquire about pressing charges for false reporting. PO Schoenleber documented Plaintiff's statement in a Supplement Narrative as follows: "Abraham stated Jacob Frankl was making a false report. Abraham stated he was contacted by Officer Zalewski who

spoke with him about this case. Abraham stated Jacob was using the Police to try to 'intimidate' him due to Jacob owing him money. Abraham was inquiring about pressing charges for false reporting. I informed Abraham that Jacob never signed a written statement stating he broke into his house. I informed Abraham that Jacob thought that the timing was suspicious due to recently seeing him at his synagogue. No further."

53. On November 21, 2025, when PO Philip Campbell asked Defendant Frankl "if he had anything to add to the case," Frankl "advised he did not." Defendant Frankl never returned to the Ramapo Police Department to memorialize, under sworn written statement, the accusation he had made against Plaintiff.

54. Three facts established by the Ramapo Police Department's own records are dispositive of Defendant Frankl's knowledge of the falsity of his accusations: (i) Frankl refused to sign a written statement; (ii) the responding officer closed the incident as NON-Offense; and (iii) Plaintiff's real-time characterization of Frankl's motive as intimidation over money owed was memorialized in the police report before this action was even contemplated.

55. The November 18-20, 2025 false reports were made with the specific intent to compel Plaintiff to abandon his lawful claim for the unpaid sublease balance by instilling in Plaintiff a fear that, unless he did so, Defendant Frankl would continue to accuse him of crimes. That conduct is the felony of Grand Larceny by Extortion under New York Penal Law Sections 155.30(6) and 155.05(2)(e)(iv).

***D. Predicate Act Three: April 21, 2026 False Email Complaint Against Yonatan Yosef***

56. On April 5, 2026, Defendants' counsel filed in the State Action a letter (NYSCEF Doc. No. 34) and attached as Exhibit A thereto a recorded deed dated May 7, 2025 (NYSCEF Doc. No. 35). That deed identified, on its face, "Yosef, Yonatan" as the contact for the buyer

Bartlett Tower LLC, and identified CIG Bartlett LLC as the seller. Mr. Yosef is, on information and belief, the Sole Member of CIG Bartlett LLC and is directly connected to the conveyance chain of the Premises.

57. From and after April 5, 2026, Defendants and their counsel had actual knowledge of Mr. Yosef's documentary connection to the Premises, having themselves placed that documentary connection into the State Action record.

58. On April 13, 2026, at a compliance conference before the State Court in the State Action, Plaintiff disclosed on the record, in open court and in the presence of Defendants' counsel, that he held a master lease on the Premises with broad subletting authority. The State Court directed that paper discovery, including production of the master lease, be completed by April 27, 2026.

59. From and after April 13, 2026, Defendants and their counsel were further on notice that the master lease existed, that it would be produced, and that it would identify by name additional persons connected to the conveyance and subletting authority for the Premises.

60. Mr. Yosef's testimony in the State Action would defeat Defendants' principal standing defense, which is that Plaintiff lacks standing to enforce the sublease because Plaintiff does not appear on the deed of record.

61. On April 21, 2026, at 2:55:32 p.m., Defendant Frankl, transmitting from his personal electronic-mail account yyf9225@gmail.com under the signature "Yisroel Frankl," transmitted to PO Charles Schoenleber of the Ramapo Police Department a false complaint requesting investigation of Mr. Yosef. The electronic-mail address yyf9225@gmail.com is, on information and belief, the personal electronic-mail address of Defendant Frankl: the initials

"yyf" correspond to his Hebrew/Yiddish given names "Yacov Yisroel Frankl," and the digits "9225" correspond to the last four digits of his personal telephone number, 347-930-9225. The substance of Defendant Frankl's April 21, 2026 electronic-mail complaint was substantially identical to the unsigned, unsworn accusations Defendant Frankl had previously made against Plaintiff in Ramapo Police Department Case No. RPD25-020297, and incorporated by reference the same case number.

62. In addition to the false electronic-mail complaint described in the preceding paragraph, Defendant Frankl had, on information and belief, visited the Ramapo Police Department in person during the week preceding April 21, 2026, requesting that the case be reopened and that Mr. Yosef be investigated. The Ramapo Police Department instructed Defendant Frankl to follow up by electronic mail, which Defendant Frankl did on April 21, 2026 as described above.

63. The fabrication expanded over time. In his electronic-mail complaint of April 21, 2026—five months after the November reports in which he stated that nothing was missing—Frankl claimed for the first time that a sweeping inventory of property had been stolen, including "the 2 camaras, a few thousand private family pictures on a SD card, rolls of stickers, a set of 10 books, [and] a whole green album with hundred's of stickers." None of these items had ever been reported missing in November 2025, when Frankl affirmatively stated that "nothing was missing from the home."

64. Upon information and belief, none of the property catalogued in the April 21, 2026 email was ever stolen, and the entire inventory of purportedly missing property is a fiction concocted by Defendants Frankl and Klein and by "Jane Doe" to lend retroactive credibility to accusations they knew to be false. The grounds for this belief are: (a) Frankl's statement to PO

Schoenleber on November 18, 2025 that "nothing was missing from the home"; (b) Frankl's statement on the same date that he "has no cameras at his residence"; (c) the complete absence of any make, model, serial number, or photograph for any item; and (d) the five-month delay and the ever-expanding character of the claimed losses.

65. The purported eyewitness on whom Frankl's accusations depend is the fictitiously-named Defendant "Jane Doe," a neighbor whose account Frankl and his confederates manufactured and escalated. When Frankl first referenced this neighbor, on November 20, 2025, the Ramapo Police recorded only that "a neighbor believes they saw someone enter his residence but that the memory was foggy," and that Frankl "did not have the pedigree of the neighbor that potentially witnessed it."

66. By April 21, 2026, that same "foggy" memory had been transformed, in Frankl's telling, into an identification of Plaintiff. In the April 21 email, Frankl asserted that the green sticker album "was missing from our downstairs hallway a few days before (that's where the neighbor saw someone looking like Mr kleinman)." A recollection that the police themselves recorded as "foggy," and that could not even identify the observed person in November, had by April hardened into a purported sighting of someone "looking like Mr kleinman."

67. Upon information and belief, "Jane Doe" did not see Plaintiff or anyone resembling Plaintiff enter Frankl's residence, and her "identification" was solicited, shaped, and manufactured by Frankl in concert with "Jane Doe" for the purpose of furnishing false corroboration of the extortionate accusations against Plaintiff. The grounds for this belief are the Department's own record of the "foggy" and unidentified initial account and its irreconcilable transformation, five months later, into a purported identification.

68. The April 21, 2026 electronic-mail complaint to the Ramapo Police Department was not the unaided work of Frankl. Its content—invoking the chain of title to 5 Bartlett Road, the role of Bartlett Tower, LLC, the deed attached to the State Action filing of April 5, 2026 (NYSCEF Doc. No. 34), the identification of non-party witness Yonatan Yosef as a putative "owner," and a request for a targeted police "investigation" of that witness—reflects drafting assistance from one or more persons with knowledge of the State Action and of the Defendants' litigation strategy. Frankl stated in the email that he was acting "as I spoke to legal advice" and that "now my lawyer got the Documents (please see attached)."

69. Defendant "John Doe" is the person who, upon information and belief, knowingly assisted Frankl in composing, drafting, and transmitting the April 21, 2026 complaint, including the statements therein that Frankl and "John Doe" knew to be false, and did so to further the scheme to extort Plaintiff and to retaliate against the witness Yosef. The grounds for this belief are the litigation-derived content of the email, its temporal alignment with the April 5, 2026 State Action filing, and Frankl's own statements that he acted on "legal advice" and that his "lawyer got the Documents" attached to the complaint.

70. On April 23, 2026, at 12:51 p.m., the Ramapo Police Department placed a responsive telephone call to Mr. Yosef.

71. On April 23, 2026, at 12:59:47 p.m., PO Charles Schoenleber transmitted to Defendant Frankl at yyf9225@gmail.com an electronic-mail message reporting on the substance of his call with Mr. Yosef, which message confirms that Mr. Yosef stated he no longer dealt with the Premises, had no knowledge of any civil lawsuit, and confirmed that Plaintiff Abraham Kleinman is the person in charge of the Premises.

72. Plaintiff was, at all relevant times, unaware that Defendant Frankl had filed the April 21, 2026 false electronic-mail complaint against Mr. Yosef. On April 23, 2026, at approximately 10:50 a.m., in compliance with the State Court's April 13, 2026 directive that paper discovery be completed by April 27, 2026, and acting in good faith and without knowledge of Defendant Frankl's parallel and unbeknownst conduct, Plaintiff transmitted by electronic mail to Defendants' counsel Peter A. Hurwitz, Esq., a copy of the master lease for the Premises. At the time of Plaintiff's 10:50 a.m. transmission, Plaintiff had no knowledge that Defendant Frankl had, two days earlier on April 21, 2026, already transmitted to the Ramapo Police Department a false electronic-mail complaint against Mr. Yosef.

73. The April 5-23, 2026 chronology accordingly establishes premeditated retaliation by Defendant Frankl against Mr. Yosef as a witness, entirely independent of Plaintiff's good-faith April 23, 2026 production of the master lease in discovery. By April 5, 2026, Defendants' counsel had filed in the State Action a deed identifying Mr. Yosef on its face. By April 13, 2026, Plaintiff had disclosed in open court the existence of the master lease. By April 20-21, 2026, Defendant Frankl had personally visited the Ramapo Police Department in person, and then on April 21, 2026 at 2:55 p.m. transmitted the false electronic-mail complaint against Mr. Yosef. The transmission was sixteen days after Defendants' counsel filed the deed identifying Mr. Yosef, and eight days after the in-court disclosure of the master lease.

74. Defendant Frankl's deliberate use of his Hebrew/Yiddish names "Yisroel Frankl" in the signature of the April 21 email, rather than the English "Jacob Frankl" under which he was litigating the State Action, evidences consciousness of guilt and a desire to obscure his identity from Plaintiff in the event the complaint became known.

75. The use of his personal electronic-mail account, rather than transmission through his counsel of record, further evidences Defendant Frankl's understanding that the complaint was retaliatory and not a legitimate report of a crime.

76. Defendant Frankl's purpose in filing the April 21, 2026 complaint against Mr. Yosef was: (a) to subject Mr. Yosef to police investigation as a means of inducing in him a fear that, if he cooperated with Plaintiff in the State Action, he would suffer further criminal accusations; (b) to thereby drive Mr. Yosef into uncooperation; and (c) to deprive Plaintiff of essential witness testimony, increasing the likelihood that Plaintiff would be unable to recover the unpaid sublease balance. That conduct is the crime of Tampering with a Witness in the Fourth Degree under New York Penal Law Section 215.10.

77. Defendant Frankl's April 21, 2026 transmission of the false complaint by electronic mail to a public office of the Ramapo Police Department, with knowledge that it contained false statements and with knowledge that it would be filed with or become a part of the records of the police department, is the crime of Offering a False Instrument for Filing in the Second Degree under New York Penal Law Section 175.30.

78. The April 21, 2026 complaint against Mr. Yosef, undertaken in furtherance of Defendants' continuing scheme to compel Plaintiff to abandon his claim for the unpaid sublease balance, is also Grand Larceny by Extortion under New York Penal Law Sections 155.30(6) and 155.05(2)(e)(iv), and Coercion in the Third Degree under New York Penal Law Section 135.60(4).

***E. Defendant Klein's Participation in the Enterprise***

79. Defendant Klein is the spouse of Defendant Frankl. Defendant Klein is a co-occupant of the Premises during the July-August 2025 period and a direct beneficiary of any extortionate retention of the $11,500.00 sublease balance.

80. Defendant Klein is a named co-defendant and counter-plaintiff in the State Action, having asserted counterclaims seeking the return of the $6,500.00 already paid, on the theory that the sublease was void or unenforceable for asserted zoning-related reasons.

81. Upon information and belief, Defendant Klein has known of, agreed to, and assisted Defendant Frankl in the planning and execution of each of the false police reports described above, and is therefore liable as a co-conspirator under 18 U.S.C. Section 1962(d), as a civil conspirator under New York law, and as an aider and abettor of the underlying tortious conduct described herein.

***K. Defendant Hurwitz's Coordination of the Extortionate Police Reports***

82. Defendant Peter A. Hurwitz, the attorney of record for Frankl and Klein in the State Action, did not confine his conduct to the lawful representation of his clients. Upon information and belief, Hurwitz conceived, counseled, directed, coordinated, and facilitated the extortionate use of the Ramapo Police Department against Plaintiff and against the non-party witness Yosef, as part of and in furtherance of the common scheme to compel Plaintiff to abandon his lawful claim for the $11,500.00 sublease balance.

83. Frankl's own words to the police establish Hurwitz's coordinating role. In the April 21, 2026 complaint, Frankl wrote that he requested a police "investigation" of the witness Yosef "as I spoke to legal advice," and that "now my lawyer got the Documents (please see attached)"—referring to the deed and chain-of-title materials that Hurwitz had filed in the State Action on April 5, 2026 (NYSCEF Doc. No. 34). The April 21 police complaint thus deployed,

against a witness, the very documents Hurwitz had marshaled in the litigation, transmitted by Frankl on counsel's "legal advice."

84. Hurwitz's coordination was undertaken with knowledge that the accusations were false and for the collateral purpose of extortion. From and after April 5, 2026, Hurwitz had actual knowledge of Yosef's documentary connection to the Premises; from and after the April 13, 2026 compliance conference, Hurwitz had actual knowledge that Yosef was a witness whose testimony would defeat the Defendants' principal standing defense. With that knowledge, Hurwitz counseled and facilitated a police complaint designed to subject that witness to criminal investigation and to chill his cooperation.

85. This Complaint predicates no claim against Hurwitz upon any statement made by him to a court or in any court filing, all of which are expressly disclaimed as a basis for liability. Hurwitz is named solely for his own conduct in conceiving, counseling, directing, coordinating, and facilitating the extortionate scheme and the false reports to the Ramapo Police Department—conduct outside the scope of any privilege and constituting fraud, collusion, and independent tortious and criminal activity within the meaning of Shapiro v. McNeill, 92 N.Y.2d 91 (1998), and Eurycleia Partners, LP v. Seward & Kissel, LLP, 12 N.Y.3d 553 (2009).

86. To the extent Defendants contend that the reports to the Ramapo Police Department or the maintenance of proceedings constitute protected petitioning activity, such conduct falls within the "sham" exception of Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49 (1993), in that the accusations were objectively baseless—no reasonable person could have believed in their merit—and were a mere pretext for the extortionate and retaliatory objectives alleged herein, as conclusively demonstrated by Frankl's own contradictory statements in the Department's records.

***F. The Continuing Withholding and the Felony Grade of the Conduct***

87. The withholding of the $11,500.00 has continued for more than nine months and counting, from August 21, 2025 to the present. Each day the withholding continues, the offense of Grand Larceny in the Third Degree under New York Penal Law Section 155.35, predicated on the larceny-by-withholding provision of Section 155.05(1) and the extortion provision of Section 155.05(2)(e)(iv), is a continuing offense.

88. Defendant Frankl's purpose in filing each of the false police reports was to extend and consummate the withholding of Plaintiff's property, by means of instilling in Plaintiff a fear that, unless Plaintiff abandoned his pursuit of the unpaid sublease balance, Defendant Frankl would continue to accuse Plaintiff and his witnesses of crimes.

89. The value of the property unlawfully withheld and extorted, exceeding $3,000.00, makes the conduct Grand Larceny in the Third Degree under New York Penal Law Section 155.35, a Class D felony punishable by up to seven years' imprisonment. The conduct is independently Grand Larceny in the Fourth Degree under New York Penal Law Section 155.30(6) (larceny by extortion regardless of value), a Class E felony punishable by up to four years' imprisonment.

90. Either offense is an "act or threat involving... extortion... chargeable under State law and punishable by imprisonment for more than one year" within the meaning of 18 U.S.C. Section 1961(1)(A), and therefore constitutes a predicate act of racketeering activity within the meaning of RICO.

***G. The Frankl-Klein Enterprise***

91. Defendants Frankl and Klein, together with such other persons as may be identified through discovery (including but not limited to any persons acting at their direction in

transmitting communications to the Ramapo Police Department or in undertaking acts in furtherance of the scheme), constitute an association-in-fact enterprise within the meaning of 18 U.S.C. Section 1961(4) (the "Frankl-Klein Enterprise"). The Enterprise comprises Defendants Frankl and Klein and, upon information and belief, Defendant Hurwitz and Defendants "John Doe" and "Jane Doe," together with such other persons as may be identified through discovery.

92. The Frankl-Klein Enterprise has, and has had at all relevant times, the following characteristics:

93. (a) A common purpose, namely, the wrongful retention by Defendants of the $11,500.00 sublease balance and the avoidance of any consequential liability Defendants might incur in the State Action, by means of extortionate threats of false criminal accusations against Plaintiff and witnesses essential to Plaintiff's case;

94. (b) Relationships among the persons associated with the Enterprise, including the familial and marital relationship between Defendants Frankl and Klein, their joint occupancy of the Premises, their joint defense in the State Action, and their joint financial interest in the unpaid $11,500.00 balance;

95. (c) Longevity sufficient to permit the Enterprise to pursue its purpose, the Enterprise having operated continuously from at least August 2025 through the present, with the threat of continuing operation as long as Plaintiff continues to seek recovery of his property; and

96. (d) A structure separate and distinct from the pattern of racketeering activity itself, in that the Enterprise pre-existed the racketeering activity (as a marital and household unit), continues to exist independent of any single predicate act, and would continue to exist even if the racketeering activity were to cease.

97. The Frankl-Klein Enterprise is distinct from each Defendant in his or her individual capacity, in that each Defendant is a natural person and the Enterprise is an association of two or more persons, satisfying the distinctness requirement of Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158 (2001).

98. Defendant Frankl has at all relevant times participated in the operation and management of the Frankl-Klein Enterprise within the meaning of Reves v. Ernst & Young, 507 U.S. 170 (1993). Defendant Frankl personally made each of the false police reports identified above, personally transmitted the April 21, 2026 false electronic-mail complaint against Mr. Yosef, and personally directed the timing of communications in furtherance of the Enterprise's purposes.

99. Defendant Klein has, upon information and belief, participated in the operation and management of the Frankl-Klein Enterprise by agreeing to and assisting Defendant Frankl in the planning of the scheme, by sharing in the financial benefit of the extortionate withholding, by joining as a co-counter-plaintiff in the State Action in pursuit of the same scheme, and by such further conduct as may be revealed in discovery.

***H. The Pattern of Racketeering Activity***

100. The acts described above constitute a pattern of racketeering activity within the meaning of 18 U.S.C. Section 1961(5) and H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989). The pattern consists of, at minimum, the following predicate acts:

101. (a) November 18, 2025 - Attempted Grand Larceny by Extortion under New York Penal Law Sections 110.00, 155.30(6), and 155.05(2)(e)(iv);

102. (b) November 20, 2025 - Attempted Grand Larceny by Extortion under New York Penal Law Sections 110.00, 155.30(6), and 155.05(2)(e)(iv), with escalation of the false-camera and identification narrative;

103. (c) April 21, 2026 - Attempted Grand Larceny by Extortion under New York Penal Law Sections 110.00, 155.30(6), and 155.05(2)(e)(iv); Tampering with a Witness under Section 215.10; and Offering a False Instrument for Filing in the Second Degree under Section 175.30; and

104. (d) August 21, 2025 to the present - Grand Larceny in the Third Degree by Extortion under New York Penal Law Sections 155.35, 155.05(1), and 155.05(2)(e)(iv), the continuing offense of larceny by withholding, perpetuated through and enforced by the foregoing extortionate threats.

105. The predicate acts are related in that they share the same purpose (extorting the retention of Plaintiff's property), the same victim (Plaintiff, with derivative harm to non-party witness Yosef), the same actor (Defendant Frankl, in concert with Defendant Klein), the same method (false criminal accusations transmitted to the Ramapo Police Department), the same effect (instilling fear in Plaintiff and Mr. Yosef of further criminal accusations unless Plaintiff abandoned the State Action), and the same proximate consequence (the continuing wrongful withholding of the $11,500.00 sublease balance).

106. The predicate acts threaten open-ended continuity within the meaning of H.J. Inc., 492 U.S. at 242. Defendant Frankl has not desisted; the pattern has escalated, not abated; the pendency of the State Action provides ongoing motive for additional predicate acts; and the very mechanism of the scheme (extortion through false police reports) is regular and repeatable.

Absent injunctive relief and the deterrent effect of this action, the racketeering activity threatens to continue indefinitely.

107. In the alternative, the predicate acts establish closed-ended continuity, the scheme having operated from November 2025 through April 2026 and continuing through the present, a span of more than six months, during which time multiple discrete predicate acts have been committed.

***I. Injury to Plaintiff's Business and Property***

108. Plaintiff has been injured in his business and property by reason of Defendants' violations of 18 U.S.C. Section 1962, within the meaning of 18 U.S.C. Section 1964(c), in at least the following respects:

109. (a) The continuing wrongful withholding of the $11,500.00 unpaid sublease balance, which is money, compensation for services, a thing in action, and evidence of debt or contract within the meaning of New York Penal Law Section 155.00(1), all of which constitute "property" within the meaning of 18 U.S.C. Section 1964(c);

110. (b) Pre-judgment interest on the foregoing at the New York statutory rate of nine percent (9%) per annum from August 21, 2025, continuing to accrue;

111. (c) Consequential litigation-support, investigation, and out-of-pocket expenses incurred in responding to and defending against the false police reports, including without limitation expenses incurred in obtaining the Ramapo Police Department case file, in preparing and filing the Order to Show Cause in the State Action (NYSCEF Doc. No. 76 in Index No. 030127/2026), and in continuing to prosecute the State Action despite the extortionate scheme;

112. (d) Reputational injury in the Monsey, New York community and in the Old Nyack Trnpk shul community where Defendant Frankl admitted to police that he photographed and recorded Plaintiff, all such reputational injury being foreseeable and proximate consequences of Defendants' false accusations of burglary and grand larceny against Plaintiff;

113. (e) Loss of testimonial cooperation by witnesses chilled by Defendants' extortionate scheme, including the foreseeable risk that other witnesses with knowledge relevant to the State Action will refuse to cooperate for fear of being subjected to the same false-accusation tactic; and

114. (f) Severe emotional distress, treatment costs, and consequential losses associated with being subjected to continuing felony-grade extortion.

115. All of the foregoing injuries are direct and proximate consequences of Defendants' RICO violations within the meaning of Holmes v. SIPC, 503 U.S. 258 (1992). The extortionate scheme was the substantial and foreseeable cause of each injury identified.

***J. Defendants' Sworn Admissions in the State Action***

116. Defendants have, in the State Action, made the following sworn admissions, each of which is dispositive of the elements of the offenses and torts alleged herein:

117. (a) Item 5 of Plaintiff's First Notice to Admit (NYSCEF Doc. No. 24): Defendant Frankl admitted, under oath sworn before a notary public, that the $6,500.00 paid by Defendants represented "the full amount of rent due";

118. (b) Item 12 of Plaintiff's First Notice to Admit (NYSCEF Doc. No. 24): Defendant Frankl admitted, under oath, that Defendants contend a writing was required for the

rental agreement to be enforceable, an admission which (in combination with the contradictory rent admission in Item 5) creates mutually exclusive sworn positions that cannot both be true;

119. (c) Interrogatory No. 3 (NYSCEF Doc. No. 77): Defendant Frankl admitted, under oath, that "Defendants vacated the premises on August 21, 2025," confirming Defendants' occupancy of the Premises through that date;

120. (d) Ramapo Police Department Case No. RPD25-020297, p. 1: Defendant Frankl admitted to PO Schoenleber on November 18, 2025 that he had "no cameras at his residence," directly contradicting his November 20, 2025 statement that two cameras worth $1,000 each had been stolen;

121. (e) Ramapo Police Department Case No. RPD25-020297, p. 2: Defendant Frankl's admission to PO Zalewski that he "could not provide any other identifying information on [the alleged stolen cameras] other than that they were 'expensive'"; and

122. (f) Defendants' Second Counterclaim in the State Action (NYSCEF Doc. No. 31): Defendants' demand for the return of the $6,500.00 already paid, which contradicts Defendant Frankl's sworn admission in Item 5 of the Notice to Admit that the $6,500.00 was "the full amount of rent due," the contradiction itself being dispositive evidence of dual intent to retain Plaintiff's property by any means available.

123. Each of the foregoing admissions is incorporated by reference into the causes of action that follow.

**COUNT I**

*(Civil RICO - 18 U.S.C. Section 1962(c) - Against Defendants Frankl, Klein, Hurwitz, John Doe, and Jane Doe)*

124. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

125. At all relevant times, Defendant Hurwitz and Defendants "John Doe" and "Jane Doe" were each a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c). Defendant Hurwitz conducted and participated, directly and indirectly, in the operation and management of the enterprise within the meaning of Reves v. Ernst & Young, 507 U.S. 170 (1993), by conceiving, directing, and coordinating the extortionate police complaints and the deployment of litigation-derived materials against the witness Yosef, thereby exercising direction over the enterprise's affairs and not merely providing legal services. Defendants "John Doe" and "Jane Doe" participated in the conduct of the enterprise's affairs by, respectively, assisting in the drafting and transmission of the false April 21, 2026 police complaint and fabricating the false eyewitness identification of Plaintiff.

126. At all relevant times, Defendants Frankl and Klein were each a "person" within the meaning of 18 U.S.C. Sections 1961(3) and 1962(c), being natural persons capable of holding a legal or beneficial interest in property.

127. At all relevant times, the Frankl-Klein Enterprise, as described above, was an "enterprise" within the meaning of 18 U.S.C. Section 1961(4), being a group of individuals associated in fact, even though not a legal entity.

128. At all relevant times, the Frankl-Klein Enterprise was engaged in, and its activities affected, interstate commerce within the meaning of 18 U.S.C. Section 1962(c), in that (i) Defendant Frankl transmitted communications by interstate electronic-mail systems in furtherance of the Enterprise, including the April 21, 2026 transmission to the Ramapo Police Department; (ii) the property at issue, including the $11,500.00 monetary obligation, has the

capacity to move in and affect interstate commerce; (iii) Defendants' affairs are conducted in part through interstate banking facilities, including the NorthEast Community Bank account on which the $6,500.00 check was drawn; and (iv) Plaintiff, the victim of the Enterprise, is a citizen of a different state (Florida), and the harm to him has crossed state lines.

129. Defendants Frankl and Klein each participated in the operation and management of the Frankl-Klein Enterprise, within the meaning of Reves v. Ernst & Young, 507 U.S. 170, 183 (1993), as described in detail above.

130. Defendants Frankl and Klein conducted, and participated in the conduct of, the affairs of the Frankl-Klein Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. Section 1962(c). The pattern of racketeering activity consisted of, at minimum, the predicate acts identified in Paragraphs 80 through 87 above, each of which is an "act or threat involving... extortion... chargeable under State law and punishable by imprisonment for more than one year" within the meaning of 18 U.S.C. Section 1961(1)(A).

131. Plaintiff has been injured in his business and property by reason of Defendants' violation of 18 U.S.C. Section 1962(c), as set forth in Paragraphs 88 through 95 above.

132. Pursuant to 18 U.S.C. Section 1964(c), Plaintiff is entitled to recover from Defendants three times the damages he has sustained, together with the costs of suit, including a reasonable attorney's fee and litigation-support fee.

## COUNT II

*(Civil RICO Conspiracy - 18 U.S.C. Section 1962(d) - Against Defendants Frankl, Klein, Hurwitz, John Doe, and Jane Doe)*

133. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

134. Defendant Hurwitz and Defendants "John Doe" and "Jane Doe" knowingly and willfully agreed and conspired with Frankl and Klein to conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d). Pursuant to Salinas v. United States, 522 U.S. 52 (1997), each such conspirator is liable whether or not he or she personally committed or agreed to commit any predicate act, provided he or she knew of and agreed to the overall objective of the conspiracy, which each did.

135. Defendants Frankl and Klein, together with such other persons as may be identified through discovery, knowingly and willfully agreed and conspired with one another to conduct or participate, directly or indirectly, in the conduct of the affairs of the Frankl-Klein Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. Section 1962(c), the substantive offense being the conduct alleged in Count I above.

136. Pursuant to Salinas v. United States, 522 U.S. 52 (1997), a conspirator under 18 U.S.C. Section 1962(d) need not personally commit any predicate act; it is sufficient that the conspirator knowingly agree to the commission of acts that, if completed, would satisfy the elements of the substantive offense. Defendant Klein, upon information and belief, knowingly agreed to and facilitated the substantive offense, sharing in the financial benefit of the extortionate withholding of Plaintiff's property, joining as co-counter-plaintiff in the State Action in furtherance of the scheme, and taking such other acts as may be revealed in discovery.

137. Defendants' conspiracy to violate 18 U.S.C. Section 1962(c) is a violation of 18 U.S.C. Section 1962(d).

138. Plaintiff has been injured in his business and property by reason of Defendants' violation of 18 U.S.C. Section 1962(d), the conspiracy having proximately caused the injuries described in Paragraphs 88 through 95 above.

139. Pursuant to 18 U.S.C. Section 1964(c), Plaintiff is entitled to recover from Defendants three times the damages he has sustained, together with the costs of suit, including a reasonable attorney's fee and litigation-support fee.

**COUNT III**

*(Breach of Contract - Against Both Defendants)*

140. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

141. In or about June 2025, Plaintiff and Defendants entered into an oral sublease agreement for the Premises for the months of July and August 2025, at a total rental of $18,000.00.

142. Plaintiff fully performed all obligations under the sublease, including delivering possession and quiet enjoyment of the Premises to Defendants for the agreed-upon period.

143. Defendants occupied the Premises through August 21, 2025, by their own sworn admission in their response to Plaintiff's Interrogatory No. 3 in the State Action.

144. Defendants paid only $6,500.00 of the total rent due, and have failed and refused to pay the balance of $11,500.00, in breach of the sublease.

145. As a direct and proximate result of Defendants' breach, Plaintiff has been damaged in the amount of $11,500.00 plus pre-judgment interest at the New York statutory rate of nine percent (9%) per annum from August 21, 2025, plus consequential damages including collection expenses, all to be proven at trial.

**COUNT IV**

*(Account Stated - Against Both Defendants)*

146. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

147. Defendant Frankl admitted, under oath, in his response to Item 5 of Plaintiff's First Notice to Admit in the State Action (NYSCEF Doc. No. 24), that the $6,500.00 paid by Defendants represented "the full amount of rent due," thereby implicitly acknowledging the balance owed for the full rental period.

148. Defendants have at all times received and retained statements of account from Plaintiff and have failed to object to the amounts claimed, thereby giving rise to an account stated in the amount of $11,500.00.

149. Plaintiff is entitled to judgment in the amount of $11,500.00 plus pre-judgment interest, costs, and disbursements.

**COUNT V**

*(Quantum Meruit / Unjust Enrichment - Against Both Defendants)*

150. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

151. Plaintiff conferred a benefit on Defendants by allowing them to occupy the Premises for the months of July and August 2025.

152. Defendants accepted and retained the benefit of such occupancy, including the operation of a children's program or day camp on the Premises during the rental period, on information and belief.

153. It would be against equity and good conscience for Defendants to retain the benefit without paying the reasonable value of the use and occupancy.

154. Plaintiff is entitled to recover the reasonable value of Defendants' use and occupancy of the Premises, in an amount not less than the unpaid contract balance of $11,500.00, plus consequential damages for any commercial use on the Premises beyond the scope of the residential sublease.

**COUNT VI**

*(Promissory Estoppel - Against Both Defendants)*

155. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

156. Defendants made a clear and unambiguous promise to pay Plaintiff $18,000.00 in rent for the use of the Premises for July and August 2025.

157. Plaintiff reasonably and foreseeably relied on Defendants' promise by delivering possession of the Premises, foregoing alternative rental opportunities, and forbearing from collection during the period in which Defendants represented they would make full payment.

158. Plaintiff has been injured by his reliance, in that he has been deprived of the unpaid balance of $11,500.00 and has incurred the costs of collection.

159. Justice requires enforcement of Defendants' promise to prevent injustice to Plaintiff.

**COUNT VII**

*(Breach of the Implied Covenant of Good Faith and Fair Dealing - Against Both Defendants)*

160. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

161. Every contract under New York law contains an implied covenant of good faith and fair dealing, which obligates each party to refrain from any act that would have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

162. Defendants have breached the implied covenant of good faith and fair dealing by, among other things: (a) failing to pay the contract balance; (b) asserting mutually exclusive sworn positions in the State Action regarding whether the $6,500.00 paid was rent or was paid for a void contract; (c) using extortionate threats of false police reports to prevent Plaintiff from receiving the fruits of the contract (namely, the unpaid rent); and (d) attempting to silence essential witnesses through the same extortionate scheme.

163. As a direct and proximate result of Defendants' breach of the implied covenant, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $11,500.00 plus the consequential damages of the extortionate scheme.

**COUNT VIII**

*(Fraudulent Inducement of Forbearance - Against Both Defendants)*

164. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

165. Defendants, through the conduct described above, fraudulently induced Plaintiff to forbear from prompt commencement of legal proceedings and to delay collection efforts by means of false representations, threats, and the implicit promise that if Plaintiff did not pursue collection aggressively, Defendants would not subject him to retaliatory false criminal accusations.

166. Defendants' representations and conduct were material, false, and made with knowledge of their falsity, and were intended to induce Plaintiff's reliance.

167. Plaintiff reasonably relied on Defendants' representations and conduct, to his detriment, by, among other things, delaying the commencement of the State Action, refraining from immediate enforcement of the master lease provisions, and continuing to engage in good-faith communication with Defendants.

168. As a direct and proximate result of Defendants' fraudulent inducement, Plaintiff has been damaged in the amount of the unpaid rent, the litigation costs incurred in responding to Defendants' extortionate scheme, and consequential damages, in an amount to be determined at trial. Plaintiff is further entitled to punitive damages, in an amount to be determined at trial, in light of Defendants' morally culpable conduct.

**COUNT IX**

*(Defamation - Libel Per Se - Against Defendant Frankl)*

169. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

170. On April 21, 2026, Defendant Frankl published, in writing, a false statement of fact about Plaintiff (and the non-party witness Yosef) by transmitting via electronic mail to the Ramapo Police Department a complaint accusing Plaintiff and Mr. Yosef of having committed crimes that they did not commit. The transmission constitutes publication in writing within the meaning of New York libel law.

171. The statements contained in Defendant Frankl's April 21, 2026 written communication imputed to Plaintiff the commission of burglary (New York Penal Law Sections 140.20-140.30) and grand larceny (New York Penal Law Sections 155.30, 155.35), each of which is a serious crime constituting libel per se under Liberman v. Gelstein, 80 N.Y.2d 429, 435 (1992), and Cammarata v. Cammarata, 61 A.D.3d 912, 913 (2d Dep't 2009).

172. Defendant Frankl's statements were false. The Ramapo Police Department's own records establish that there were no signs of forced entry, that Defendant Frankl had no cameras at his residence, that nothing was reported missing, and that the case was closed as NON-Offense. Plaintiff did not commit the crimes Defendant Frankl falsely attributed to him.

173. Defendant Frankl's statements were made with actual malice within the meaning of New York Times Co. v. Sullivan, 376 U.S. 254 (1964), and common-law malice within the meaning of Liberman, 80 N.Y.2d at 438-439. Actual malice is established by: (a) Defendant Frankl's knowledge of the falsity of his statements, demonstrated by his direct contradictions between November 18 and November 20, 2025 regarding the existence of cameras and the existence of missing property; (b) his refusal to sign a written statement, which is direct evidence of his consciousness of the falsity of his accusations; (c) the timing of Defendant Frankl's April 21, 2026 communication against Mr. Yosef, which occurred sixteen days after his own counsel had filed the deed identifying Mr. Yosef and eight days after Plaintiff's in-court disclosure of the master lease, establishing premeditated retaliation rather than a genuine belief that Mr. Yosef had committed a crime; and (d) Defendant Frankl's deliberate use of his Hebrew/Yiddish name "Yisroel Frankl" and his personal electronic-mail account yyf9225@gmail.com in transmitting the April 21, 2026 false complaint, rather than the English name and counsel-of-record channel under which he was litigating the State Action, evidencing consciousness of guilt and a desire to obscure his identity.

174. Common-law malice is established by Defendant Frankl's contemporaneous admission to the Ramapo Police Department, recorded in PO Schoenleber's Supplement Narrative of November 26, 2025, that he was "using the Police to try to 'intimidate'" Plaintiff over money owed.

175. Any qualified privilege that would otherwise attach to a communication to law enforcement under Toker v. Pollak, 44 N.Y.2d 211 (1978), Stega v. New York Downtown Hosp., 31 N.Y.3d 661 (2018), Mohen v. Stepanov, 59 A.D.3d 502 (2d Dep't 2009), and Sagaille v. Carrega, 194 A.D.3d 92 (1st Dep't 2021), is defeated by the actual and common-law malice established above.

176. Because Defendant Frankl's statements constitute libel per se, damages are presumed and need not be specifically pled. Liberman, 80 N.Y.2d at 435. Plaintiff has suffered general damages to his reputation in an amount not less than $2,000,000.00, plus special damages including out-of-pocket and litigation-support costs incurred in responding to the false report, plus punitive damages in light of Defendant Frankl's morally culpable and felony-grade conduct.

**COUNT X**

*(Defamation - Slander Per Se - Against Defendant Frankl)*

177. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

178. On November 18, 2025 and again on November 20, 2025, Defendant Frankl published, orally, false statements of fact about Plaintiff by communicating to the Ramapo Police Department accusations that Plaintiff had broken into his residence and stolen property worth approximately $2,000.00.

179. Defendant Frankl's oral statements imputed to Plaintiff the commission of burglary under New York Penal Law Sections 140.20-140.30 and grand larceny in the fourth degree under New York Penal Law Section 155.30, each of which is a serious crime constituting slander per se under Liberman v. Gelstein, 80 N.Y.2d 429, 435 (1992).

180. Defendant Frankl's statements were false, made with actual malice and common-law malice, and not subject to any privilege, all as set forth in Paragraphs 150 through 153 above.

181. Because Defendant Frankl's statements constitute slander per se, damages are presumed. Plaintiff has suffered general damages in an amount not less than $1,500,000.00, plus special damages and punitive damages, all to be determined at trial.

**COUNT XI**

*(Intentional Infliction of Emotional Distress - Against Both Defendants)*

182. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

183. Defendants' conduct as described above, in undertaking a sustained, felony-grade scheme to extort Plaintiff into abandoning his lawful claim by means of repeated false criminal accusations against Plaintiff and his witnesses, was extreme and outrageous, going beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community, within the meaning of Howell v. New York Post Co., 81 N.Y.2d 115, 122 (1993).

184. Defendants undertook the conduct with the intent to cause Plaintiff severe emotional distress, or with reckless disregard of the substantial probability of causing such distress, the conduct being specifically calculated to make Plaintiff fear continuing criminal accusations and to bend Plaintiff to Defendants' will.

185. Defendants' conduct caused Plaintiff severe emotional distress, including anxiety, sleeplessness, fear of further criminal accusations against himself and against any person he might call as a witness, and the consequential damage to his ability to live and work without fear of false accusation.

186. Plaintiff is entitled to compensatory damages in an amount not less than $1,500,000.00 and to punitive damages, all to be determined at trial.

**COUNT XII**

*(Conversion - Against Both Defendants)*

187. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

188. Plaintiff has a possessory right and interest in the $11,500.00 unpaid sublease balance, which is property within the meaning of New York law, including a chose in action to enforce the contractual debt and money that is specifically identifiable as the sum owed for the July-August 2025 rental period.

189. Defendants have exercised dominion over Plaintiff's property in derogation of Plaintiff's rights, by withholding the property continuously from August 21, 2025 to the present and by using the extortionate scheme described above to interfere with Plaintiff's ability to enforce his chose in action.

190. Defendants' interference with Plaintiff's property right has been intentional, knowing, and undertaken with the specific purpose of depriving Plaintiff of his property permanently.

191. Plaintiff has been damaged by Defendants' conversion in the amount of $11,500.00 plus interest, plus the consequential damages associated with the impairment of his chose in action through extortion, in an amount not less than $500,000.00, plus punitive damages to be determined at trial.

**COUNT XIII**

*(Tortious Interference with Prospective Business Relations - Against Both Defendants)*

192. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

193. Plaintiff had, and continues to have, prospective business relations with non-party witness Yonatan Yosef and with other potential witnesses essential to Plaintiff's prosecution of the State Action, including their testimonial cooperation, their availability for deposition, and their willingness to attest to facts within their knowledge relevant to Plaintiff's claims.

194. Defendant Frankl knew of Plaintiff's prospective business relations with Mr. Yosef from no later than April 5, 2026, when Defendants' own counsel filed in the State Action a deed (NYSCEF Doc. No. 35) identifying Mr. Yosef on its face. Defendant Frankl's knowledge was further confirmed by Plaintiff's in-court disclosure of the master lease on April 13, 2026.

195. Defendant Frankl intentionally interfered with Plaintiff's prospective business relations with Mr. Yosef and with other witnesses, by transmitting at 2:55:32 p.m. on April 21, 2026, the false electronic-mail complaint against Mr. Yosef to the Ramapo Police Department, with the specific intent to chill Mr. Yosef's cooperation and to deter other potential witnesses from cooperating with Plaintiff.

196. Defendant Frankl's interference was accomplished by wrongful means within the meaning of Carvel Corp. v. Noonan, 3 N.Y.3d 182, 191 (2004), including without limitation: (i) the crime of Falsely Reporting an Incident under New York Penal Law Section 240.50; (ii) the crime of Offering a False Instrument for Filing under New York Penal Law Section 175.30; (iii) the crime of Coercion under New York Penal Law Section 135.60; (iv) the crime of Tampering with a Witness under New York Penal Law Section 215.10; and (v) the crime of Grand Larceny by Extortion under New York Penal Law Sections 155.30(6) and 155.05(2)(e)(iv).

197. Plaintiff has been injured by Defendant Frankl's tortious interference, including the loss of witness cooperation, the consequential litigation costs of dealing with chilled witnesses, the diminished prospects of recovering the unpaid sublease balance, and the prospect that other potential witnesses will refuse to cooperate going forward.

198. Plaintiff is entitled to damages in an amount not less than $750,000.00, plus punitive damages, in light of Defendants' morally culpable and felony-grade interference.

**COUNT XIV**

*(Abuse of Process - Against Defendants Frankl and Hurwitz)*

199. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

200. Defendant Hurwitz is jointly liable for the abuse of process alleged in this Count, in that Hurwitz conceived, counseled, directed, and coordinated the issuance and use of police and other process against Plaintiff and the witness Yosef to obtain the collateral objective of extorting the $11,500.00 sublease balance, outside the legitimate ends of such process.

201. By contacting the Ramapo Police Department and inducing it to dispatch officers to investigate the fabricated allegations, by causing the opening of case file RPD25-020297, and by transmitting the April 21, 2026 written electronic-mail complaint, Defendant Frankl caused regularly issued process to be set in motion, within the meaning of Curiano v. Suozzi, 63 N.Y.2d 113, 116 (1984), and Panish v. Steinberg, 32 A.D.3d 383 (2d Dep't 2006).

202. Defendant Frankl acted with intent to do harm to Plaintiff without excuse or justification.

203. Defendant Frankl used the foregoing process in a perverted manner to obtain a collateral objective outside the legitimate ends of the process, namely, the extortion of Plaintiff into abandoning the State Action and the intimidation of Mr. Yosef into withdrawing his cooperation as a witness. The collateral objective was the wrongful retention of the $11,500.00 sublease balance and the impairment of Plaintiff's litigation.

204. Plaintiff has been injured by Defendant Frankl's abuse of process in an amount not less than $500,000.00, plus punitive damages, all to be determined at trial.

**COUNT XV**

*(Prima Facie Tort - Against Defendant Frankl - Alternative Count as to April 21, 2026 Yosef Communication)*

205. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

206. This Count is pled in the alternative to the foregoing Counts to the extent the conduct alleged in connection with the April 21, 2026 electronic-mail complaint against Mr. Yosef is found not to be redressable as a defamation, tortious interference, abuse of process, or other named tort.

207. Defendant Frankl intentionally inflicted harm on Plaintiff by transmitting the April 21, 2026 electronic-mail complaint against Mr. Yosef. The act was undertaken with sole motivation of disinterested malevolence within the meaning of Burns Jackson Miller Summit & Spoehler v. Lindner, 59 N.Y.2d 314 (1983), in that Defendant Frankl had no financial relationship with Mr. Yosef and could not have benefited financially from the complaint except through its derivative effect of chilling Mr. Yosef's cooperation in the State Action.

208. Plaintiff has suffered specific special damages, including: (a) consequential investigation costs in the amount of [to be determined]; (b) witness-availability costs in the amount of [to be determined]; (c) costs of obtaining the April 21, 2026 communication and related police records in the amount of [to be determined]; and (d) other quantifiable losses in an amount not less than $250,000.00 to be proven at trial.

**COUNT XVI**

*(Civil Conspiracy - Against Defendants Klein and Hurwitz)*

209. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

210. Defendant Hurwitz likewise conspired with Defendants Frankl and Klein to commit each of the torts alleged in Counts IX through XV above. Hurwitz knew of and agreed to the unlawful objective and committed overt acts in furtherance of the conspiracy, including counseling, directing, and coordinating the false police complaints and the deployment of litigation-derived materials against the witness Yosef. Hurwitz is jointly and severally liable for the damages caused thereby.

211. Defendant Klein conspired with Defendant Frankl to commit each of the torts alleged in Counts IX through XV above. Defendant Klein knew of, agreed to, and intentionally facilitated the commission of those torts.

212. Upon information and belief, Defendant Klein took overt acts in furtherance of the conspiracy, including her joinder in the State Action as a counter-plaintiff seeking the return of the $6,500.00 already paid, her continued occupancy of the Premises as a co-occupant during the July-August 2025 rental period, and such other acts as may be identified through discovery.

213. Plaintiff has been damaged by the conspiracy in the amounts set forth in the underlying tort counts, and Defendant Klein is jointly and severally liable with Defendant Frankl for such damages.

**COUNT XVII**

*(Aiding and Abetting Tortious Conduct - Against Defendants Klein and Hurwitz)*

214. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

215. Defendant Hurwitz knew of and provided substantial assistance to Defendant Frankl in the commission of the torts alleged in Counts IX through XV above, by conceiving, counseling, directing, and coordinating the false police complaints and the use of litigation-derived materials against the witness Yosef. Hurwitz is jointly and severally liable for the resulting damages.

216. Each of the underlying torts alleged in Counts IX through XV above was committed primarily by Defendant Frankl.

217. Defendant Klein knew of and provided substantial assistance to Defendant Frankl in the commission of those torts, within the meaning of Kaufman v. Cohen, 307 A.D.2d 113, 125 (1st Dep't 2003), and Goel v. Ramachandran, 111 A.D.3d 783, 792 (2d Dep't 2013), by, among other things, joining as a co-counter-plaintiff in the State Action in furtherance of the same extortionate scheme, sharing in the financial benefit of the wrongful withholding, and providing logistical and other support for the conduct, all to the extent revealed in discovery.

218. Plaintiff has been damaged by Defendant Klein's aiding and abetting in the amounts set forth in the underlying tort counts, and Defendant Klein is jointly and severally liable for such damages.

**COUNT XVIII**

*(Violation of New York Judiciary Law § 487 — Against Defendant Hurwitz)*

219. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

220. Defendant Hurwitz is, and at all relevant times was, an attorney duly admitted to practice law in the courts of the State of New York. Section 487 of the New York Judiciary Law subjects any such attorney who "is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party" to liability for treble the damages sustained, in addition to misdemeanor liability.

221. Hurwitz engaged in intentional deceit and collusion directed at the State Court and at Plaintiff, including: (a) causing or permitting the filing in the State Action of materially false statements and a false affidavit of service; (b) making representations to the State Court concerning the chain of title and his own prior knowledge of the master lease that he knew to be false or misleading, notwithstanding his prior involvement with the property owner; and (c) counseling, directing, and coordinating the submission of knowingly false complaints to the Ramapo Police Department to manufacture purported evidence and leverage for use against Plaintiff in the State Action. Because Hurwitz's deceit was directed at the court, no separate pending proceeding need be shown; in any event, each act of deceit occurred during the pendency of the State Action.

222. Pursuant to Amalfitano v. Rosenberg, 12 N.Y.3d 8 (2009), a violation of Judiciary Law § 487 is established by a single act of intentional deceit and entitles the injured party to recover treble the damages caused by the deceit, including the legal and litigation-support expenses incurred by reason of the deceit.

223. By reason of Hurwitz's violations of Judiciary Law § 487, Plaintiff has been damaged and is entitled to recover treble his damages, together with costs and the reasonable expenses, including litigation-support fees, incurred as a result of the deceit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Abraham Kleinman respectfully requests that this Court enter judgment in his favor and against Defendants Jacob Frankl a/k/a Jacob Frankl a/k/a Yacov Frankl a/k/a Yacov Yisroel Frankl a/k/a Yisroel Frankl and Sheindl Klein a/k/a Sheindl Frankl, jointly and severally where applicable, as follows:

**(A)** On Count I (Civil RICO under 18 U.S.C. Section 1962(c)), compensatory damages in an amount to be determined at trial, trebled pursuant to 18 U.S.C. Section 1964(c), together with the costs of suit and reasonable attorneys' and litigation-support fees, in an aggregate amount in excess of $15,034,500.00;

**(B)** On Count II (RICO Conspiracy under 18 U.S.C. Section 1962(d)), compensatory damages in an amount to be determined at trial, trebled pursuant to 18 U.S.C. Section 1964(c), together with the costs of suit and reasonable attorneys' and litigation-support fees;

**(C)** On Count III (Breach of Contract), damages of $11,500.00 plus pre-judgment interest at the New York statutory rate of nine percent (9%) per annum from August 21, 2025, plus consequential damages and costs of collection;

**(D)** On Counts IV, V, VI, and VII (Account Stated, Quantum Meruit/Unjust Enrichment, Promissory Estoppel, and Breach of the Implied Covenant of Good Faith and Fair

Dealing), damages in amounts not less than $11,500.00 each, plus consequential damages, in the alternative;

(E) On Count VIII (Fraudulent Inducement of Forbearance), compensatory damages in an amount to be determined at trial, plus punitive damages in an amount to be determined at trial;

(F) On Count IX (Defamation - Libel Per Se), presumed damages in an amount not less than $2,000,000.00, plus special damages, plus punitive damages in an amount to be determined at trial;

(G) On Count X (Defamation - Slander Per Se), presumed damages in an amount not less than $1,500,000.00, plus special damages, plus punitive damages in an amount to be determined at trial;

(H) On Count XI (Intentional Infliction of Emotional Distress), compensatory damages in an amount not less than $1,500,000.00, plus punitive damages in an amount to be determined at trial;

(I) On Count XII (Conversion), compensatory damages in an amount not less than $500,000.00, plus punitive damages in an amount to be determined at trial;

(J) On Count XIII (Tortious Interference with Prospective Business Relations), compensatory damages in an amount not less than $750,000.00, plus punitive damages in an amount to be determined at trial;

(K) On Count XIV (Abuse of Process), compensatory damages in an amount not less than $500,000.00, plus punitive damages in an amount to be determined at trial;

(L) On Count XV (Prima Facie Tort), special damages in an amount not less than $250,000.00, in the alternative;

(M) On Counts XVI and XVII (Civil Conspiracy and Aiding and Abetting against Defendants Klein and Hurwitz), joint and several liability with Defendant Frankl in the amounts set forth in the underlying tort counts;

(N) On Count XVIII (Violation of New York Judiciary Law § 487 against Defendant Hurwitz), treble the damages sustained by reason of Hurwitz's deceit and collusion, together with the reasonable expenses and litigation-support fees incurred as a result thereof, pursuant to Amalfitano v. Rosenberg, 12 N.Y.3d 8 (2009);

(O) Punitive damages on each common-law tort count in an aggregate amount in excess of $10,000,000.00, in light of Defendants' morally culpable, felony-grade, and continuing conduct, within the meaning of Walker v. Sheldon, 10 N.Y.2d 401 (1961), and Ross v. Louise Wise Services, Inc., 8 N.Y.3d 478, 491 (2007);

(P) Permanent injunctive relief enjoining Defendants, their agents, representatives, attorneys, and all persons acting in concert with them, from: (i) filing any further police report, governmental complaint, or other communication with any law-enforcement agency, prosecutorial office, or governmental authority concerning Plaintiff or any identified witness in this action or in the State Action, unless such report is made in a signed sworn written statement and a copy is contemporaneously served on Plaintiff; (ii) contacting, communicating with, approaching, surveilling, photographing, or recording Yonatan Yosef or any other witness in this action or in the State Action; (iii) engaging in any further act of intimidation, harassment, or retaliation against any person identified as a

potential witness; and (iv) continuing to withhold the $11,500.00 unpaid sublease balance from Plaintiff;

(Q) An order referring Defendants' conduct to the United States Attorney for the Southern District of New York and the Rockland County District Attorney for investigation and prosecution under, at minimum, (i) New York Penal Law Section 155.35 (Grand Larceny in the Third Degree, a Class D felony) by extortion; (ii) New York Penal Law Section 155.30(6) (Grand Larceny in the Fourth Degree, a Class E felony) by extortion; (iii) New York Penal Law Section 135.60(4) (Coercion in the Third Degree); (iv) New York Penal Law Section 215.10 (Tampering with a Witness in the Fourth Degree); (v) New York Penal Law Section 175.30 (Offering a False Instrument for Filing in the Second Degree); (vi) New York Penal Law Section 240.50 (Falsely Reporting an Incident in the Third Degree); and (vii) New York Penal Law Sections 210.10 and 210.45 (False Swearing and Making a Punishable False Written Statement);

(R) Pre-judgment and post-judgment interest at the maximum rate permitted by law;

(S) Reasonable attorneys' fees and litigation-support fees pursuant to 18 U.S.C. Section 1964(c) and any other applicable provision of law;

(T) Costs and disbursements of this action; and

(U) Such other and further relief as this Court deems just, proper, and equitable, in an aggregate amount in excess of $30,000,000.00, the precise amount to be determined at trial.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: Miami Beach, Florida
June 8, 2026

/s/ abraham kleinman
ABRAHAM KLEINMAN
3901 Indian Creek Miami Beach, Fl. 33140